This certifies that this is the OPINION of the Appellate Division in this cause.

**Robert E. Fein**
**Clerk**

**Mel L. Greenberg, Justice**

**THIRD NATIONAL BANK OF HAMPDEN COUNTY, Plaintiff**
vs.
**CONTINENTAL INSURANCE COMPANY**
**Defendant and Third-Party Plaintiff**
vs.
**Gerald F. PARKER & SON, INC.**
**R. J. SAEX INSURANCE AGENCY, INC., Third-Party Defendant**

**No. 303**

District Court Department
Appellate Division, Western District
Trial Court of the
Commonwealth of Massachusetts

**July 7, 1981**

Michael G. West, J.D., counsel for plaintiff
John D. Ross, Jr., Esq., counsel for defendant
Counsel for Third-Party Defendant—None

## DECISION AND ORDER

This cause came on to be heard in the Appellate Division of the District Court Department for the Western District sitting in Springfield upon report from the Springfield Division, and as no prejudicial error was found,

It is hereby

ORDERED: That the Clerk of the Springfield Division make the following entry on the docket of said Court, namely: Report Dismissed.

Date: July 7, 1981
**Bernard Lenhoff, Justice**
**Mel L. Greenberg, Justice**
**Allan McGuane, Justice**
Opinion filed herewith.

**Robert E. Fein, Clerk**

## OPINION

**LENHOFF, J.** This is an action instituted by the plaintiff, Third National Bank of Hampden County (Bank) against the defendant, Continental Insurance Company (Continental) for negligence in not paying it for its secured interest in property of Gerald F. Parker & Son, Inc. (Parker); namely, a 1967 Diamond Tractor, and for converting the insurance proceeds resulting from the property loss; said property having been destroyed by fire for which Parker was insured with

Continental therefor. Continental caused a third-party action to be brought against Parker and the R. J. Saex Insurance Agency, Inc. (Saex), which insurance agency placed the insurance for Parker with Continental, the said Continental seeking to be reimbursed if found to be liable to Bank.

At the trial there was evidence tending to show: That on or about May 8, 1973, the Bank and Parker entered into an installment sales contract whereby Parker financed the purchase of one (1) 1967 Diamond Tractor, Identification No. EK633HC-569597; that as a part of said installment sales contract, the Bank obtained a security interest in said tractor and caused its name to be placed as first lienholder on the vehicle's Certificate of Title issued by the Registry of Motor Vehicles of the Commonwealth of Massachusetts on May 30, 1973; that on May 8, 1973 when said contract was made by and between the Bank and Parker, the total time price set forth therein was in the sum of $11,300.00; that one provision in said contract provided that Parker agreed that the risk of loss of the tractor was on it, and Parker would cause said tractor "to be insured against loss by fire, theft and collision as may be required by Third National Bank of Hampden County under the circumstances, naming said Bank as loss payee to the extent of its interest;" that the tractor was not insured or registered in Massachusetts in 1974; that Parker applied for insurance with Saex for the period from January 1, 1975 to January 1, 1976 and in its application for same, which was undated and unsigned, verbiage therein disclosed that Parker purchased the vehicle new in April, 1972 and listed no lienholder thereon; that the said application was accompanied by an unsigned and undated Certificate of Title application form which was part of Saex records showing thereon that the vehicle was previously registered in Florida, also there were no liens thereon and the said

vehicle was purchased in April, 1972; that on or about July 15, 1975, a fire loss occurred causing the total loss of the tractor; that as a result of the said loss, Continental paid Parker $7,150.00 on or about August 1, 1975 with Parker keeping the tractor and later selling it to a person unknown; that subsequent to May 8, 1973, Parker failed to make payments as specified in its contract with the Bank and the Bank commenced an action in the Springfield Division of the District Court Department to recover the then balance due of $3,988.82; that on November 21, 1975 the Bank recovered judgment against Parker in the sum of $3,988.82; that on or about April 21, 1978, the Bank, through its attorneys, made demand on Continental for $4,759.93 for judgment plus interest for failure to list the Bank as loss payee on the draft for $7,150.00 it issued with Parker as the sole named payee therein; and, that Continental did not pay to the Bank the funds so demanded by it.

At the close of the trial and prior to final arguments the plaintiff made the following requests for rulings:

1. Upon the evidence a finding is warranted for Plaintiff.

2. Upon the evidence a finding is not warranted for Defendant.

3. As a matter of law the proceeds of the insurance loss paid to Gerald F. Parker & Son, Inc. by Defendant, Continental Insurance Company, were covered by Plaintiff's security interest in the 1967 Diamond Tractor, which vehicle was a total loss due to fire on July 15, 1975. M.G.L. c.106, Section 9-306.

4. As a matter of law, Defendant's failure to list Plaintiff as a loss payee on the draft issued to Gerald F. Parker & Son, Inc. to compensate it for the fire loss of July 15, 1975 constituted conversion as to Plaintiff. **First National Bank of Highland v. Merchants' Mutual Insurance Co.**, 392 N.Y.S.2d 836, 21 UCC Rep. Ser 892 (Sup. Ct, 1977).

The report states that it contains all of

the evidence material to the question reported. (The evidence above set forth is a summarization of the evidence in the report that incorporated therein a copy of the installment sales contract, the issued Certificate of Title, copies of insurance application and Certificate of Title application, Springfield Division execution copy and demand letter of Bank to Continental—with the material parts or portions thereof included therein.)

The Court found the following facts and conclusions of law:—

The Plaintiff's requests for admissions, not being answered or otherwise contradicted under the rule are taken as admitted.

They establish that the Plaintiff loaned money to Gerald F. Parker & Son, Inc. on May 8, 1973 for the purpose of that corporation acquiring title to a 1967 Diamond T. Tandem Tractor, Identification EK 633 HC 569597, on which it took a security interest under an installment sales contract wherein, in addition to other terms, the Corporation agreed with respect to the goods secured.

"to cause them to be insured against loss by fire, theft and collision as may be required . . . under circumstances naming said bank as loss payee to the extent of its interest" and this was done for the year 1973 by an entry on the Registry of Motor Vehicles Certificate of Title #B 237835 in block #16 "First Lienholder—THIRD NATIONAL BANK OF HAMPDEN COUNTY, date of lien 5/8/73."

Thereafter in 1975 Gerald F. Parker & Son, Inc. applied to the R. J. Saex Insurance Agency, Inc. for a policy of insurance in connection with an application for a certificate of registration on the same vehicle, representing that the vehicle had never been registered in Massachusetts and had been in Florida previously. It likewise represented the vehicle had been purchased new by the corporation, which was untrue and did not disclose its seller. All of this was taken as represented and the Saex Agency had

no actual knowledge of the history of the previous certificate of title in Massachusetts, the vehicle not having been registered in Massachusetts in 1974. Saex Agency wrote the insurance for the Defendant, Continental. The evidence did not reveal whether a new certificate of title ever issued for the year, 1975 but the case proceeded on the assumption that it had although if it did issue no check could have been made as to prior years registrations or certificates of title by vehicle identification number, since such a check would have revealed the prior certificate of title.

In July of 1975 the vehicle was substantially destroyed by fire and Continental settled with the corporation for $7,150.00, the corporation keeping the vehicle and later selling it.

In December of 1975 the Plaintiff obtained a judgment for $3,955.82 against "Gerald F. Parker, doing business as Gerald F. Parker & Son, a/k/a Gerald F. Parker & Son, Inc.", representing the balance due on the loan of May 8, 1973 on the vehicle involved in the loss, i.e. the 1967 Diamond T. Tandem Tractor, Identification #EK 663 HC 569597.

I proceed on the assumption this judgment operates against the corpora- and not, as it seems to read, against Gerald F. Parker as an individual doing business in a corporate name. Clearly the Defendant, Continental, at all times dealt with the corporation and not with the individual.

On April 21, 1978 the Plaintiff made demand on the Defendant for payment of the balance due on the May 8, 1973 loan, alleging its security interest as set out in the Certificate of Title. Suit was brought, R. J. Saex Agency, Inc. and Gerald F. Parker & Son, Inc. have been made Third Party Defendants and have defaulted for failure to answer.

Plaintiff alleges in Count I that Continental has "failed, neglected and/or refused to pay the money demand by the Bank" relying on its lien.

Plaintiff alleges in Count II the Defendant, Continental, converted the 1967 Diamond Tractor which was then amended to allege conversion of "the insurance proceeds of the 1967 Diamond Tractor."

## CONCLUSIONS OF LAW

I conclude that in view of the fact that the Defendant, Continental, did not acquire title to or otherwise dispose of the 1967 Diamond T. Tandem Tractor, that it has not converted the same to its own use.

I conclude that a contract of insurance is a personal contract between insurer and insured and that such a contract in and of itself does not give rise to any rights in a secured creditor to its proceeds in the absence of provisions therefor in the contract itself.

I conclude that where the debtor agrees to insure for the benefit of the secured creditor and does so insure that in those circumstances the secured creditor has an equitable lien on the proceeds of any loss payment as between the creditor and the debtor.

I conclude as to this equitable lien that it is unenforceable against the insurer unless the creditor is either made a party to the original contract of insurance by way of a loss payee clause or the insurer is put on notice of the equitable lien prior to loss settlement.

I conclude that to enforce an equitable lien, actual notice is necessary.

I conclude in this case no actual notice was given.

I conclude that "insurance proceeds" were not included in the definition of "proceeds" in **G.L. c. 106 S 9-306** and I conclude the settlement of an insurance fire loss without transfer of title is not a transaction wherein the collateral has been "sold, exchanged, collected or otherwise disposed of."

I conclude that the Continental Insurance Company took neither legal or equitable interest in the collateral in writing a policy of insurance thereon and consequently was under no obligation to any Third Party to inquire as to the state of the title of the collateral, it being only interested in that to the extent of the insured's insurable interest and for no other reason. Consequently, it was under no obligation to inquire as to the state of the title at the time of the loss except for its own protection regarding the claimant's insurable interest.

I conclude the burden now resting on insurance companies to recognize security interests in accord with the most recent definition of "Proceeds" in **G.L. c 106 S 9-306** to include "Insurance payable by reason of loss or damage to the collateral, is proceeds, except to the extent that it is payable to a person other than a party to the security agreement" did not apply in July or August of 1975.

The trial court denied each of the plaintiff's requests for rulings of law; and, ordered judgment for the defendant Continental and both third-party defendants.

After judgment, plaintiff filed a motion for new trial or in the alternative to alter or amend judgment, and based its reason that the court made an error of law in the findings of fact and conclusions of law including but not limited to its conclusion that "proceeds" under G.L. c. 106, sec. 9-306 do not include insurance proceeds.

The court after hearing, denied said motion.

The plaintiff claiming to be aggrieved by the denial of its requests for rulings numbered one through 4 (1 through 4) and the denial of its motion for a new trial or in the alternative to alter or amend judgment, same is here for our review and decision.

This matter, in our view, rests upon the interpretation of the Uniform Commercial Code, Section 9-306 (1) as it existed on the date of the fire loss of the insured 1967 Diamond Tractor, which loss occurred on or about July 15, 1975.

The plaintiff urges that said section 9-306 (1) enables it, as the holder of a perfected security interest, to be entitled

to the insurance proceeds resulting from the loss of the involved collateral. Hence, the plaintiff contends that the defendant is legally obligated to pay it to the extent of its interest in and to the 1967 Diamond Tractor that Parker caused to be insured, and that its failure so to do is attributable to both the insurer's negligence and conversion. We do not agree and concur with the disposition by the trial judge.

At the date of the fire loss to the collateral insured by Parker in which the Bank held a secured interest, U.C.C., Section 9-306 (1), read as follows:—

"Proceeds" includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are "cash proceeds". All other proceeds are "non-cash proceeds".

Clearly, in the case at bar, the "proceeds" did not result from a sale, exchange or collection of the concerned collateral. Also, the words "or otherwise disposed of" has no application to an insurance policy payment made pursuant to a loss as per contract between Parker and the Defendant insurer. **Quigley v. Caron,** 247 A. 2d 94, 5 U.C.C. Rep. 943 (Me. 1963); **Universal C.I.T. Credit Corp., v. Prudential Inv. Corp.,** 101 R.I. 696, 222 A.2d 571, 3 U.C.C. Rep. 696 (1966).

The foregoing is brought into sharp focus by citing U.C.C., Section 9-306 (1) as amended by Chapter 512, Section 7 of the Acts of 1979 which by Section 16 thereof took effect on January 1, 1980. Said amended Section 9-306 (1) reads as follows:—

"Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or

proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are cash proceeds". All other proceeds are "noncash proceeds".

It is to be noted that the change, in part, of said Section 9-306 (1) strikes the words from the first sentence "or otherwise disposed of" and inserts in place thereof, the following:

"or other disposition of collateral or proceeds." Further, the following sentence is added:

**"Insurance payable by reason of loss or damage to the collateral is proceeds,** except to the extent that it is payable to a person other than a party to the security agreement."

The Reporter's Notes at the end of U.C.C. 106, Section 9-306, under the caption Official U.C.C. Reasons for 1972 Change, so far as is material, read as follows:

The first sentence of subsection (1) is rewritten for clarity.

The former second sentence of subsection (1) is omitted consistently with the abandonment of the term "contract right" in Section 9-106.

The new second sentence of subsection (1) is intended to overrule various cases to the effect that proceeds of insurance on collateral are not proceeds of the collateral. The "except" clause is intended to say that if the insurance contract specifies the person to whom the insurance is payable, the concept of "proceeds" will not interfere with performance of the contract.

The plaintiff argues that Section 15 of the amending statute (Chapter 512 of the Acts of 1979) which reads: "Unless a

change in law has clearly been made, the provisions of the new U.C.C. shall be deemed declaratory of the meaning of the old U.C.C.", indicates that insurance payable by reason of loss or damage to collateral is "proceeds" under said Section 9-306 (1) as it existed in July of 1975, the date of the loss in this case. We disagree and interpret said Section 15 adding the insurance sentence to be a change in the law to thereby make this aspect thereof crystal clear.

In view of the interpretation above disclosed, we look to the law as it is applied to the here concerned situation in July and August of 1975. At that time, insurance proceeds was not, as it now appears to be, impressed with the perfected secured interest of a third party. Consequently, there was no duty on the part of the insurer to ascertain and determine whether any other had any interest therein. In fact, it seems, on balance, that a greater duty should then have been shouldered by the secured creditor to police the enforcement of its agreement with the debtor than on an insurer who had no privity of contract with one other than the debtor. Further, we take special note of the installment sales contract wherein Parker agrees to cause the property here concerned to be insured against loss by fire, theft and collision **as may be required** by the plaintiff Bank, naming said Bank as loss payee to the extent of its interest. In the entire record of these proceedings, we find no evidence that the plaintiff **required** the insurance, the proceeds of which it seeks to recover from the insurer.

In 1975, both the plaintiff Bank with a perfected security interest in the Diamond Tractor and Parker, each possessed an insurable interest in the same. Also, each then had a right to protect its interest in said Tractor by its own contract of insurance. By the representations made by Parker to Continental, it was not contracting with Continental to insure any interest but its own. Parker never

responded to any requirement of the plaintiff to insure, naming it as loss payee. Parker never notified the plaintiff of its insurance contract with Continental. And, the plaintiff apparently learned of the loss and insurance plus the payment to Parker, long after the loss occurred as its demand letter to Continental was dated April 21, 1978. From the foregoing, we can only conclude that Parker did not obtain the insurance with the intention, at the time, to perform the insurance condition of the installment sales contract. Hence, there is no equitable lien here involved as the inference is that Parker intended to insure only his interest in the Diamond Tractor. **Stearns v. Quincy Mutual Fire Insurance Company,** 124 Mass. 61 (1878).

Had evidence been produced that Parker obtained insurance required; or, if it be construed that he had a contractual obligation to so obtain such insurance because Parker agreed that the risk of loss by fire was its risk; and, pursuant to its agreement so to do, it informed the plaintiff that insurance had been obtained, the plaintiff would have an equitable interest therein even though not named as loss-payee. Such equitable interest would arise because the plaintiff would be considered an assignee with priority status. **Providence County Bank v. Benson,** 24 Pick, 204 (1840). However, here there is a disclosed intent on Parker's part to conceal the true and actual facts from Continental and its agent, Saex. Parker misrepresented that it was the owner of unencumbered property and never registered in Massachusetts. In any event, where one possesses an equitable lien or interest, the ability to exercise that lien depends upon the insurance company having notice of the existence of the agreement to insure. **Gibbes Machinery Co. v. Niagra Fire Insurance Co., S.C.,** 111 S.E. 805 (1922) appearing on pages 1463 and 1464, Vol. 21 A.L.R. 1460. It follows that if an insurance company learns of a lien before it makes payment,

it would have to honor the equitable lien or interest that exists. But, if payment be made before actual knowledge comes to its attention, the policy does not subsist, for the claim is settled and the entire matter is at an end thereby considered functus officio.

The trial court's action in denying all the requests for rulings of law submitted was correct. Although the first request, "Upon the evidence a finding is warranted for Plaintiff," normally is allowed where there is conflicting evidence, there does not appear to be such conflicting evidence. Consequently, the denial was in order. **DiGesse v. Columbia Pontiac Co., Inc.** 369 Mass. 99 (1975). Requests numbered 2 and 3 were properly dealt with in the light of the discussion hereinbefore set forth. And, as to the fourth and last request, its denial was required as Continental never obtained title to the Tractor nor was its payment made to Parker improperly.

Finally, the trial judge did not abuse his discretion in his denial of the plaintiff's motion for a new trial or in the alternative to alter or amend judgment. **doCanto v. Ametek, Inc.,** 367 Mass. 776, 787 (1975). **Daddario v. Gloucester,** 329 Mass. 297, 301 (1952).

We find no prejudicial error.

Report is ordered dismissed.

**Bernard Lenhoff, Justice**
**Mel L. Greenberg, Justice**
**Allan McGuane, Justice**

This certifies that this is the opinion of the Appellate Division in this cause.

**Robert E. Fein, Clerk**